UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


GARY JACKSON,

        Petitioner,

                                 CASE NO. 02-CV-74233-DT

v.                               JUDGE NANCY G. EDMUNDS

                                 MAGISTRATE JUDGE PAUL J. KOMIVES

TIMOTHY LUOMA,[1]

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

| | | | |
|---|---|---|---|
| I. | RECOMMENDATION | | 2 |
| II. | REPORT | | 2 |
| | A. | *Procedural History* | 2 |
| | B. | *Factual Background Underlying Petitioner's Conviction* | 9 |
| | C. | *Procedural Default* | 9 |
| | D. | *Standard of Review* | 10 |
| | E. | *Evidentiary Claims (Grounds 1, 4, 7, 9-10, 13-14, 19, 21, 25, and 30)* | 12 |
| | | 1. *Clearly Established Law* | 12 |
| | | 2. *Analysis* | 13 |
| | |    a. Tucker's Verdict of Acquittal (Grounds 1, 9, and 14) | 14 |
| | |    b. Other Acts Evidence (Grounds 4, 7, 13, and 21) | 15 |
| | |    c. Hearsay Evidence (Grounds 10 and 19) | 16 |
| | |    d. Vaughn's Motive to Fabricate (Ground 30) | 17 |
| | F. | *Denial of Severance (Grounds 5 and 16)* | 17 |
| | | 1. *Clearly Established Law* | 17 |
| | | 2. *Analysis* | 18 |
| | G. | *Denial of Confrontation (Grounds 8, 15, 20, 25, and 26)* | 19 |
| | | 1. *Limitations on Cross-Examination (Grounds 8, 15, 20, and 26)* | 19 |
| | |    a. Clearly Established Law | 19 |
| | |    b. Analysis | 20 |
| | | 2. *Admission of Hearsay Evidence (Ground 25)* | 26 |
| | |    a. Clearly Established Law | 26 |
| | |    b. Analysis | 28 |
| | H. | *Identification Evidence (Ground 24)* | 28 |
| | | 1. *Clearly Established Law* | 29 |
| | | 2. *Analysis* | 30 |

_____

    [1]By Order entered this date Timothy Luoma, Warden at the Baraga Maximum Correctional Facility, has been substituted as the proper respondent.

| | | | |
|---|---|---|---|
| I. | *Weight and Sufficiency of the Evidence (Grounds 12, 23, and 33)* | | 31 |
| | 1. | *Weight of the Evidence* | 31 |
| | 2. | *Sufficiency of the Evidence* | 32 |
| | | a. Clearly Established Law | 32 |
| | | b. Analysis | 33 |
| J. | *Jury Review of Statements and Police Reports (Ground 27)* | | 34 |
| K. | *Prosecutorial Misconduct (Ground 28)* | | 35 |
| | 1. | *Clearly Established Law* | 35 |
| | 2. | *Analysis* | 35 |
| L. | *Suppression of Evidence (Ground 35)* | | 38 |
| | 1. | *Clearly Established Law* | 38 |
| | 2. | *Analysis* | 39 |
| M. | *Ineffective Assistance of Counsel (Grounds 6, 17, 29, and 31-32)* | | 41 |
| | 1. | *Clearly Established Law* | 41 |
| | 2. | *Analysis* | 42 |
| | | a. Trial Counsel | 42 |
| | | b. Appellate Counsel | 46 |
| N. | *Sentencing Claims (Grounds 3 and 18)* | | 47 |
| | 1. | *Proportionality (Ground 3)* | 47 |
| | | a. Clearly Established Law | 47 |
| | | b. Analysis | 50 |
| | 2. | *Judge's Basis for Sentence (Ground 18)* | 51 |
| O. | *Newly Discovered Evidence (Grounds 11, 22, and 34)* | | 51 |
| P. | *Conclusion* | | 52 |
| III. | <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> | | 53 |

\*      \*      \*      \*      \*

I.      <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.      <u>REPORT</u>:

A.      *Procedural History*

1.      Petitioner Gary Jackson is a state prisoner, currently confined at the Baraga Maximum Correctional Facility in Baraga, Michigan.

2.      On August 13, 1998, petitioner was convicted of one count each of second degree murder, MICH. COMP. LAWS § 750.317; assault with intent to commit murder, MICH. COM. LAWS § 750.84; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On August 28, 1998, he was

sentenced to concurrent terms of 20-40 years' imprisonment each for the murder and assault

convictions, and to a mandatory consecutive term of two years' imprisonment on the felony firearm

conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claims:

I.      DID THE TRIAL COURT JUDGE CREATE REVERSIBLE ERROR
        WHEN HE GRANTED PLAINTIFF'S MOTION TO SUPPRESS CO-
        DEFENDANT'S VERDICT OF INNOCENCE IN HIS PREVIOUS TRIAL
        THAT FORMED THE BASIS OF THE PRIOR BAD ACT EVIDENCE?

II.     DID THE TRIAL COURT JUDGE VIOLATE THE PRINCIPLE OF
        PROPORTIONALITY WHEN HE SENTENCED DEFENDANT TO 20 TO
        40 YEARS IN PRISON ON TWO CONVICTIONS?

Petitioner also filed a supplemental *pro per* brief, raising three additional claims:

I.      DID THE TRIAL COURT JUDGE CREATE REVERSIBLE ERROR
        WHEN HE DENIED DEFENDANT'S MOTION FOR SEVERANCE?

II.     DID THE TRIAL COURT JUDGE CREATE REVERSIBLE ERROR
        WHEN HE GRANTED PLAINTIFF'S MOTION TO ADMIT EVIDENCE
        OF PRIOR BAD ACTS?

III.    DID THE DEFENSE COUNSEL MAKE A MISTAKE OF SUCH
        MAGNITUDE THAT SUPPORTS A FINDING OF INEFFECTIVE
        ASSISTANCE OF COUNSEL?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Jackson*, No. 214713, 2000 WL 33400216 (Mich. Ct. App. Nov. 21, 2000) (per

curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal to the Michigan Supreme Court,

raising the following claims:

I.      THE DEFENDANT-APPELLANT NOW ARGUES THAT THE TRIAL
        COURT JUDGE ABUSED HIS DISCRETION IN EXCLUDING

EVIDENCE OF CODEFENDANT TUCKER'S ACQUITTAL FOR TWO REASONS: (1) THAT IT WAS RELEVANT TO THE DEFENSE THEORY, AND (2) THAT IT DENIED THE DEFENDANT'S RIGHT TO CONFRONTATION AND CROSS-EXAMINATION OF ADVERSE WITNESSES.

II.      THE DEFENDANT-APPELLANT ARGUES THAT THE TRIAL COURT JUDGE COMMITTED REVERSIBLE ERROR WHEN HE ALLOWED THE ADMISSION OF PRIOR ACTS TESTIMONY OF MR. MITCHELL UNDER THE IDENTITY EXCEPTION OF MCR 404B.

III.     THE APPELLANT ARGUES THAT THE TRIAL COURT ERRED WHEN IT DENIED HIS MOTION FOR SEVERANCE.

IV.      THE DEFENDANT-APPELLANT ARGUES THAT HE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

         A.      DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO INTRODUCE INTO EVIDENCE THE POLICE REPORTS CONTAINING STATEMENTS THAT THE KEY WITNESS MADE TO THE POLICE REGARDING THEIR KNOWLEDGE OF THE SHOOTINGS WHERE THE STATEMENTS CONTRADICTED THE WITNESSES TESTIMONY.

         B.      DEFENSE COUNSEL FAILED TO EXERCISE DUE DILIGENCE AND INVESTIGATE THE PROPER GROUNDS FOR THE MOTION TO SEVER.

         C.      DEFENSE COUNSEL FAILED TO CROSS-EXAMINE THE FIREARMS EXAMINER ABOUT THE PROBABILITY AND SCIENTIFIC BASIS OF THE PROSECUTOR'S THEORY THAT THERE WAS SUFFICIENT EVIDENCE OF A SECOND GUN FROM A FRAGMENT.

IV.      THE APPELLANT ARGUES THAT THE TRIAL JUDGE MADE A DETERMINATION THAT THE DEFENDANT WAS GUILTY OF FIRST DEGREE MURDER AND DISREGARDED THE JURY'S FINDING OF GUILT IN THE SECOND DEGREE AND SENTENCED THE DEFENDANT ON THE HIGHER END OF THE GUIDELINES AS A RESULT.

V.       THE TRIAL COURT JUDGE ABUSED HIS DISCRETION BY PERMITTING THE PROSECUTOR TO SOLICIT TESTIMONY OF CODEFENDANT JACKSON'S PAST ACTS FROM CODEFENDANT

4

SMART'S ALIBI WITNESS IN VIOLATION OF MCR 404B.

VI.   THE TRIAL COURT JUDGE COMMITTED ERROR WHEN HE
PRECLUDED MR. WALKER FROM BEING PROPERLY IMPEACHED
BY THE DEFENDANT ABOUT HIS HEARSAY TESTIMONY,
THEREBY ABRIDGING THE DEFENDANT'S RIGHT TO CROSS-
EXAMINE AND CONFRONT THE WITNESS AGAINST HIM.

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See*

*People v. Jackson*, 465 Mich. 856, 631 N.W.2d 344 (2001).

5.   In October 2001, petitioner filed a motion for relief from judgment in the trial court

pursuant to MICH. CT. R. 6.500-.508, raising 11 claims for relief.

6.   On October 29, 2002, before the trial court ruled on his motion for relief from

judgment, petitioner filed in this Court an application for the writ of habeas corpus, raising 14 claims

for relief.

7.   On January 6, 2003, the trial court issued an order denying petitioner's motion for

relief from judgment. *See People v. Jackson*, No. 98-002820 (Wayne County, Mich., Cir. Ct. Jan.

6, 2003).

8.   On December 15, 2003, I entered a Report recommending that the Court hold

petitioner's habeas application in abeyance pending his exhaustion of state court remedies through

an appeal of the trial court's judgment on his motion for relief from judgment.  The Court adopted

my recommendation on March 19, 2004.

9.   Petitioner returned to state court, filing an application for leave to appeal the trial

court's denial of his motion for relief from judgment in the Michigan Court of Appeals.  In support

of his appeal, petitioner raised the following claims:

I.   THAT THE DEFENDANT'S DUE PROCESS RIGHTS WERE VIOLATED
BY THE ADMISSION OF THE VICTIM'S IN-COURT AND OUT-OF-

5

COURT IDENTIFICATIONS THAT WERE THE FRUIT OF UNDULY SUGGESTIVE PROCEDURES.

II.    THAT DEFENDANT'S RIGHTS OF CONFRONTATION AND CROSS-EXAMINATION AND TO PRESENT WITNESSES IN HIS DEFENSE WERE ABRIDGED WHERE THE DEFENSE WAS PRECLUDED FROM ARGUING BIAS AND RECENT FABRICATION AS A THEORY IN REBUTTAL TO THE WITNESS' CLAIM OF FEAR AS THE BASIS FOR HIS FAILURE TO IDENTIFY DEFENDANT PRIOR TO 1998 THAT IT WAS TUCKER'S ACQUITTAL WHICH PROMPTED THE IDENTIFICATION.

III.    THE ADMISSION OF WALKER'S TESTIMONY RELATING VAUGHN'S OUT-OF-COURT STATEMENT WAS REVERSIBLE ERROR AS SUCH STATEMENTS FAILED TO SATISFY MRE 803(2) AND THE CONFRONTATION CLAUSE OF THE US CONST.

IV.    THAT DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DUE TO COUNSEL'S FAILURE TO PERFORM IN A REASONABLE MANNER WHERE COUNSEL FAILED TO OBJECT TO THE AMENDING OF THE COMPLAINT AT PRE-EXAM OR VAUGHN'S IN-COURT AND OUT-OF-COURT IDENTIFICATIONS OR WALKER'S HEARSAY TESTIMONY OR INTRODUCE EXCULPATORY EVIDENCE OR MOVE TO STRIKE INCONSISTENT TESTIMONY OR FAMILIARIZE HERSELF WITH DISCOVERY MATERIALS OR OBJECT TO THE COURT'S JURY INSTRUCTIONS AND CUMULATIVELY DENIED DEFENDANT A FAIR TRIAL.

V.    THAT DEFENDANT'S RIGHTS TO COMPULSORY PROCESS AND CROSS-EXAMINATION AND TO PRESENT WITNESSES WERE ABRIDGED BY THE COURT'S PRECLUSION OF SERGEANT STEVENSON'S IMPEACHING TESTIMONY.

VI.    THAT THE COURT REVERSIBLY ERRED WHERE IT DENIED THE JURY'S REQUEST TO REVIEW WITNESSES' STATEMENTS AND POLICE REPORTS.

VII.    THE DEFENDANT IS ENTITLED TO A NEW TRIAL WHERE THE PROSECUTOR ALLOWED WITNESSES TO TESTIFY FALSELY WITHOUT CORRECTION.

VIII.    THAT THE PROSECUTOR ARGUED FACTS NOT IN EVIDENCE AND/OR MANIPULATED OR MISSTATED EVIDENCE AND/OR GAVE UNSWORN TESTIMONY AND/OR VOUCHED FOR THE CREDIBILITY

OF WITNESSES DURING HIS CLOSING ARGUMENTS AND SUCH MISCONDUCT INFECTED THE ENTIRE PROCEEDINGS DENYING DEFENDANT A FAIR TRIAL.

IX.   THAT DEFENDANT'S CLAIMS SHOULD BE CONSIDERED FOR CAUSE AND PREJUDICE WHERE DEFENDANT WAS DENIED AN ADEQUATE RECORD ON APPEAL AND ACCESS TO THE COURTS AND AN EVIDENTIARY HEARING AND EFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL.

X.   THAT DEFENDANT SHOULD BE GRANTED A NEW TRIAL AND/OR EVIDENTIARY HEARING AND/OR AN INVESTIGATOR AND/OR COUNSEL TO DEVELOP AND OBTAIN AFFIDAVITS FROM WITNESSES TO RICARDO MITCHELL'S RECANTATION.

XI.   THAT DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH GUILT AND THE JURY'S VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

XII.   THAT DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL WHERE COUNSEL FAILED TO PERFORM IN A REASONABLE MANNER OR INVESTIGATE GROUNDS OF APPEAL OR PRESENT OBVIOUS AND MERITOUS [sic] CLAIMS OR REPORT OR INFORM THE COURT OF HIS CONFLICT OF INTERESTS.

XIII.   THE DEFENDANT SHOULD BE GRANTED A NEW TRIAL BECAUSE THE PROSECUTOR SUPPRESSED OR WITHHELD EVIDENCE FAVORABLE TO THE DEFENDANT WHERE PRIOR ACTS EVIDENCE OF PEOPLE V. JACKSON, LC#: 98-2889 WERE ADMITTED AT TRIAL AND AFTER TRIAL THE PROSECUTOR ILLEGALLY NOLLE PROSECUTED OR DISCONTINUED OR ABANDONED THE PROSECUTION OF LC#: 98-2889 AND GOADED DEFENSE COUNSEL TO MOVE FOR DISMISSAL WITHOUT COMPLYING WITH MCLA 767.29; MSA 28.969.

On February 6, 2004, the Michigan Court of Appeals dismissed petitioner's delayed application for leave to appeal for failure to comply with the court rules. *See People v. Jackson*, No. 252887 (Mich. Ct. App. Feb. 6, 2004). The court of appeal subsequently denied petitioner's motion for reconsideration, concluding that petitioner had failed to cure the defects in his original filing. *See*

7

*People v. Jackson*, No. 252887 (Mich. Ct. App. Mar. 5, 2004). Petitioner sought leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Jackson*, 471 Mich. 896, 688 N.W.2d 85 (2005).

10.     On January 31, 2005, I entered an Order lifting the stay previously entered.

11.     On March 3, 3005, respondent filed a supplemental answer to petitioner's application for the writ of habeas corpus. Respondent contends that petitioner's claims are barred by his procedural default in the state courts, and that petitioner's claim based on the admission of prior acts evidence is not cognizable on habeas review. Petitioner filed a traverse on March 16, 2005.

12.     On May 9, 2005, petitioner filed a motion to amend his habeas application, along with a copy of the proposed amended application, raising thirty-four substantive grounds for relief, some of which overlap.[2] The claims for relief fall into 11 broad categories: (1) evidentiary claims (Grounds 1, 4, 7, 9-10, 13-14, 19, 21, 25, and 30); (2) denial of severance (Grounds 5 and 16); (3) denial of confrontation and cross-examination (Grounds 8, 15, 20, and 26); (4) improper identification evidence (Ground 24); (5) insufficient evidence (Grounds 12, 23, and 33); (6) prohibiting jury from reviewing witness statements and police reports (Ground 27); (7) prosecutorial misconduct (Ground 28); (8) suppression of exculpatory evidence (Ground 35); (9) ineffective assistance of trial counsel (Grounds 6, 17, and 29); (10) ineffective assistance of appellate counsel (Grounds 31-32); (11) sentencing claims (Grounds 3 and 18); and (12) newly discovered evidence (Grounds 11, 22, and 34). A number of the claims asserted by petitioner are substantively the same,

---

[2]The amended petition lists 37 grounds for relief. The last two, however, assert that petitioner has established cause and prejudice to allow for review of his claims, and that he is entitled to an evidentiary hearing, and the listing of grounds omits a Ground 2.

and the claims asserted in the amended petition are, for the most part, essentially the same as the

claims asserted in petitioner's original application for the writ of habeas corpus.

B.      *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's conviction were summarized by the Michigan Court of

Appeals:

>    This case arises out of the shooting death of Jermaine Webb on December 8,
> 1996, at approximately 4:15 a.m. in the city of Detroit.  Darius Vaughn, a passenger
> in Webb's vehicle at the time of the shooting, testified at trial that two men in a green
> Jeep Cherokee, identified as defendant and co-defendant Arthur Smart, opened fire
> with rifles as Webb was stopped at a red traffic light.  Vaughn also identified
> Kenneth Tucker as the driver of the Jeep Cherokee.  Vaughn stated that he had the
> opportunity to look at the three men in the Jeep Cherokee because it had passed him
> and Webb three times as they were driving on Chene.  Vaughn also stated that he had
> known Tucker for about fifteen years, and that he had known defendant and Smart
> for about nine years.  During the shooting, Vaughn, who was unhurt, was able to get
> out of the car and fled to a nearby house of a friend.  Shortly after 5:00 a.m., police
> officers arrived on the scene.  Vaughn also returned to the scene within twenty to
> twenty-five minutes, but did not identify the shooters to police officers at that time.
> At trial, Vaughn testified that he did not inform the police officers of the shooters
> because he feared for his life.  In fact, it was not until February 11, 1998, when
> police officers sought Vaughn, that Vaughn actually identified defendant and Smart
> as the shooters.
>    Defendant, Smart, and Tucker were all charged with first-degree murder,
> assault with intent to murder, and defendant and Smart were also charged with
> felony-firearm.  Defendant and Smart were tried before the same jury and ultimately
> convicted of second-degree murder, assault with intent to murder, and felony-
> firearm.  Tucker was tried in a bench trial and acquitted of all charges.

*Jackson*, 2000 WL 33400216, at *1, slip op. at 1-2.

C.      *Procedural Default*

Respondent first contends that the bulk of petitioner's claims are barred by petitioner's

procedural default in the state courts, because petitioner failed to raise these claims on direct appeal.

While many of petitioner's claims appear to be defaulted, the Court should not resolve the matter

on this basis.  The procedural default inquiry in this case is complicated by the state court

9

proceedings and the various claims raised at different points in those proceedings. On the contrary, while petitioner's habeas claims are numerous, they are readily resolved on the merits. While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995). Accordingly, I proceed directly to the merits of the claims.

D.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court

decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Evidentiary Claims (Grounds 1, 4, 7, 9-10, 13-14, 19, 21, 25, and 30)*

Petitioner first raises a number of claims relating to the trial court's admission or exclusion of various evidence.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude. *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987). "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law. State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution." *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

    2.    *Analysis*

### a. *Tucker's Verdict of Acquittal (Grounds 1, 9, and 14)*

In his habeas application, petitioner raises two claims relating to the verdict of acquittal entered by the court in co-defendant Tucker's bench trial. First, in Ground 1 he claims that the trial court erred in suppressing Tucker's verdict of acquittal. Second, in Grounds 9 and 14, he argues that the prosecutor should have been precluded from relitigating Tucker's participation in the shooting where Tucker had been acquitted.

As to petitioner's first argument, there was no error amounting to a denial of due process. As a general matter, a verdict of acquittal in a codefendant's case signifies nothing of relevance to the defendant's own case. *See Prince v. Lockhart*, 971 F.2d 118, 122 (8th Cir. 1992); *United States v. Irvin*, 787 F.2d 1506, 1517 (11th Cir. 1986); *United States v. Fernandez-Roque*, 703 F.2d 808, 813 (5th Cir. 1983). As to petitioner's second argument, that the prosecutor was precluded from again litigating in petitioner's trial Tucker's involvement in the crime, that claim has been rejected by the Supreme Court. In *Standefer v. United States*, 447 U.S. 10 (1980), the trial court rejected the defendant's claim that an acquittal of his codefendant precluded his conviction on the same charge, concluding that collateral estoppel does not apply in such situations. *See id.* at 21-25. Under this rule, the prosecution was not precluded from relitigating Tucker's involvement in the context of petitioner's trial. *See Nichols v. Scott*, 69 F.3d 1255, 1270 (5th Cir. 1990); *United States v. Boffa*, 557 F. Supp. 306, 314 (D. Del.), *aff'd*, 723 F.2d 899 (3d Cir. 1983).[3] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[4]

---

[3]Petitioner does not claim that he was denied a constitutional right by the inconsistency between his conviction and Tucker's acquittal, nor could he as the Supreme Court has rejected this type of claim. *See Harris v. Rivera*, 454 U.S. 339, 345-48 (1981) (per curiam).

[4]Petitioner also contends that he was denied his right to confront the witnesses against him by the trial court's exclusion of Tucker's acquittal. This claim is addressed in part G.1, *infra*.

14

*b. Other Acts Evidence (Grounds 4, 7, 13, and 21)*

Petitioner next contends that he was denied a fair trial by the introduction of prior bad acts evidence. This other acts evidence consisted of testimony by Ricardo Mitchell that petitioner was the assailant in another shooting on the same date as the crime for which petitioner was convicted, in which Mitchell and James Davis were the victims. As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence. This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b). Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial. *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).

Further, petitioner is not entitled to habeas relief on this claim because he cannot show that the admission of this evidence was improper under state law. Under Michigan law,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MICH. R. EVID. 404(b)(1). As the Michigan Court of Appeals explained, given the similarity and temporal proximity between the two shootings, Mitchell's testimony was relevant to the issue of the identify of the shooter. *See Jackson*, 2000 WL 33400216, at *3, slip op. at 4. Because identity was

clearly contested in petitioner's case, and because the court instructed the jury that Mitchell's testimony should be considered only for purposes of the identity issue, and not to show character or propensity, petitioner cannot show that he was denied a fair trial by the introduction of this evidence.

### c.  Hearsay Evidence (Grounds 10 and 19)

Petitioner also contends that he was denied a fair trial by the introduction of hearsay evidence.  Specifically, he contends that Michael Walker's testimony that Vaughn stated to him that petitioner was the shooter was improperly admitted under the excited utterance exception to the hearsay rule, MICH. R. EVID. 803(2).[5]  However, Walker testified at trial that he heard gun shots and a car screeching to a stop, that about five minutes later Vaughn ran up the stairs to the house were Walker was staying and started beating on the door. When Walker answered, Vaughn was scared and began running around saying "I've been shot."  Vaughn at that time identified petitioner and his codefendants as the shooters.  *See* Trial Tr., dated 8/11/98, at 147-53.

The excited utterance exception excludes from the operation of the hearsay rule "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."  MICH. R. EVID. 803(2).  As the Michigan Supreme Court has explained, "[t]o qualify as an excited utterance, two requirements must be satisfied.  First, there must be a startling event, and, second, the resulting statement of the declarant must be made while under the excitement caused by that event."  *People v. Straight*, 430 Mich. 418, 423-24, 424 N.W.2d 257, 259 (1988).  Here, Walker's testimony that Vaughn's statement was made shortly after

---

[5]Petitioner's related Confrontation Clause claim with respect to this testimony (Ground 25) is addressed in part G.2, *infra*.

the shooting, and that Vaughn was scared, running around, and needed to be calmed down, are sufficient to satisfy the excited utterance exception. *See People v. Walker*, 256 Mich. App. 530, 534-35, 697 N.W.2d 159, 162 (2005); *cf. United States v. Jones*, 299 F.3d 103, 113 (2d Cir. 2002). Petitioner's argument that Walker's testimony was unreliable because he did not relate Vaughn's statement when he (Walker) spoke with the police goes to the credibility of Walker's testimony, not the reliability of Vaughn's statement as a matter of hearsay law. It was thus a matter for cross-examination, *see* Trial Tr., dated 8/11/98, at 155-58, and not a matter of admissibility of the evidence. Accordingly, petitioner cannot show that he was denied a fair trial by the introduction of this evidence.

### d. Vaughn's Motive to Fabricate (Ground 30)

Petitioner also contends that he was denied a fair trial when he was precluded from presenting his theory that Tucker's acquittal in the case involving Ricardo Mitchell and James Davis gave Vaughn a motive to change his statement and fabricate his testimony. This claim fails for the same reason that petitioner's confrontation claim relating to Tucker's acquittal, discussed *infra* part G.1, fails.

### F.    Denial of Severance (Grounds 5 and 16)

Petitioner next contends that he was denied a fair trial when the trial court failed to sever his trial from that of his codefendants. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 1.    Clearly Established Law

As a general matter, there is no constitutional right to severance. In *Zafiro v. United States*, 506 U.S. 534 (1993), the Court considered "whether Rule 14 [of the Federal Rules of Criminal

17

Procedure] requires severance as a matter of law when codefendants present 'mutually antagonistic defenses.'" *Zafiro*, 506 U.S. at 535.  Thus, *Zafiro* did not establish any rule of constitutional law, and is inapplicable to petitioner's state court conviction.  *Cf. Williams v. Singletary*, 114 F.3d 177, 181 (11th Cir. 1997) (noting that *Zafiro* involved an interpretation of the Federal Rules of Criminal Procedure and thus "it is not at all clear that *Zafiro* establishes a rule of constitutional law to be applied to state court judgments in § 2254 proceedings," but finding it unnecessary to resolve the question); *Henry v. Scully*, 918 F. Supp. 693, 714 n.7 (S.D.N.Y. 1995) ("Petitioner's counsel argues that Henry's trial counsel erred in failing to request a severance. This argument, which depends upon Henry's having had a constitutional right to a severance, is without merit.  Henry has shown no federal constitutional right to a severance.").

Thus, habeas relief will be warranted for a trial court's failure to sever a petitioner's trial from that of his codefendants only where the denial itself deprives the petitioner of a fundamentally fair trial.  In other words, "a state trial court's refusal to grant severance mandates habeas corpus relief (1) when the joint trial 'resulted in the deprivation of a specific constitutional guarantee such as the right to call witnesses . . . or the right to confrontation,' or (2) when the joint trial abridged the defendant's 'fundamental right to a fair trial as secured by the Fourteenth Amendment.'" *Turpin v. Kassulke*, 26 F.3d 1392, 1404 (6th Cir. 1992) (Feikens, D.J., concurring in part and dissenting in part) (quoting *Jenkins v. Bordenkircher*, 611 F.2d 162, 168 (6th Cir. 1979)); *accord Fox v. Ward*, 200 F.3d 1286, 1292 (10th Cir. 2000); *Hoodt v. Helling*, 141 F.3d 892, 896 (8th Cir. 1998).

2.    *Analysis*

Here, petitioner has identified no constitutional rights which he was denied by the failure of the trial court to sever his case from those of his codefendants, nor has he shown that he was denied

18

a fair trial.  As the Michigan Court of Appeals explained, none of the codefendants testified at trial,

nor were any police statement by the codefendants implicating petitioner introduced at trial.  *See*

*Jackson*, 2000 WL 33400216, at *4, slip op. at 4.  Petitioner has thus failed to point to specific

instances of prejudice resulting from the failure to sever his trial.  *See Vincent v. Seabold*, 226 F.3d

681, 691 (6th Cir. 2000).  Accordingly, the Court should conclude that petitioner is not entitled to

habeas relief on this claim.

G.     *Denial of Confrontation (Grounds 8, 15, 20, 25, and 26)*

Petitioner next contends that he was denied his Sixth Amendment right to confront the

witnesses against him in several respects.  The Sixth Amendment provides, in relevant part: "In all

criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

against him." U.S. CONST. amend. VI.  The Confrontation Clause is applicable to the states through

the 14th Amendment's Due Process Clause.  *Pointer v. Texas*, 480 U.S. 400, 406 (1965).  The

Supreme Court's "Confrontation Clause cases fall into two broad categories:  cases involving the

admission of out-of-court statements and cases involving restrictions imposed by law or by the trial

court on the scope of cross-examination."  *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per

curiam).  Petitioner's habeas claims raise both types of Confrontation Clause challenges.

1.     *Limitations on Cross-Examination (Grounds 8, 15, 20, and 26)*

a. *Clearly Established Law*

The latter category of Confrontation Clauses cases recognizes that "[c]onfrontation means

more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315

(1974).  Thus, in cases where the trial court has restricted cross-examination in some manner, "the

Court has recognized that Confrontation Clause questions will arise because such restrictions may

'effectively . . . emasculate the right of cross-examination itself.'"  *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).  However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish."  *Fensterer*, 474 U.S. at 20.  The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination."  *California v. Green*, 399 U.S. 149, 166 (1970).  Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination."  *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986).

### b.  Analysis

Petitioner contends that he was denied effective cross-examination in two respects.  First, he contends that the trial court improperly limited his direct examination of Officer William Stevenson.  Stevenson was the officer who took the statement from Michael Walker, and petitioner sought to elicit from Stevenson that Walker never identified a perpetrator, or repeated Vaughn's identification of a perpetrator, to Officer Stevenson.  The court excluded this testimony, concluding that it was barred by the hearsay rule.  *See* Trial Tr., dated 8/12/98, at 118-21.  This claim, however, does not raise an issue under the Confrontation Clause.  By its terms, the Confrontation Clause applies only to the witnesses at trial, and "a defendant has no right to confront [a person] who provides no evidence at trial."  *United States v. Francesco*, 725 F.2d 817, 822 (1st Cir. 1984); *accord Cooper v. California*, 386 U.S. 58, 62 n.2 (1967) ("Petitioner also presents the contention

20

here that he was unconstitutionally deprived of the right to confront the witnesses against him, because the State did not produce the informant to testify against him.  This contention we consider absolutely devoid of merit."); *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985); *United States v. Morgan*, 757 F.2d 1074, 1076 (10th Cir. 1985) *McAllister v. Brown*, 555 F.2d 1277, 1278 (5th Cir. 1977) (per curiam); *State v. Byrd*, 448 N.W.2d 29, 31 (Iowa 1989); *State v. Barton*, 439 P.2d 719, 723 (N.M. 1968); *Gaertner v. State*, 150 N.W.2d 370, 374 (Wis. 1967).  Because Stevenson did not give any testimony against petitioner at trial, the trial court's failure to allow petitioner to question Stevenson does not implicate the Confrontation Clause.

Rather, to the extent the trial court's ruling on the admissibility of Stevenson's testimony implicates the Sixth Amendment, it does so under the Compulsory Process Clause, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI.  The Compulsory Process Clause, as a general matter, "grants a criminal defendant the right to call witnesses that are 'material and favorable to his defense.'" *Wong v. Money*, 142 F.3d 313, 324 (6th Cir. 1998) (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).  Unfortunately, the Supreme Court has provided little guidance on the exact contours of the Compulsory Process Clause.  *See Pennsylvania v. Ritchie*, 480 U.S. 39, 55 & n. 12 (1987) (noting that the Compulsory Process Clause has rarely been a factor in the Court's decisions).  Nevertheless, some general principles do exist to guide the Court's determination.  First, as a general matter the clause establishes, "at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." *Id*. at 56.  Second, it is clear that the right to compulsory process is not absolute; thus, in

21

certain circumstances a witness may be precluded from testifying as a sanction for defendant's failing to comply with a discovery order, *see Taylor v. Illinois*, 484 U.S. 400, 410-14 (1988), and testimony is subject to general evidentiary rules such as those governing relevance and privilege, *see Washington v. Texas*, 388 U.S. 14, 23 n.21 (1967); *Smith v. Cromer*, 159 F.3d 875, 882 (4th Cir. 1998).

To the extent that petitioner claims he was entitled to elicit Stevenson's testimony as a matter of the Compulsory Process Clause, the claim fails. As the Supreme Court has explained, "more than mere absence of testimony is necessary to establish a violation of the right [to compulsory process]." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 866 (1982). The Sixth Amendment does not provide a defendant the right to process for obtaining any witness, only "witnesses in his favor." U.S. CONST. amend. VI. "This language suggests that [a defendant] cannot establish a violation of his constitutional right to compulsory process merely by showing that [he was deprived of witnesses' testimony]. He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense." *Valenzuela-Bernal*, 458 U.S. at 867. Here, petitioner cannot establish that Stevenson's testimony would have been material and favorable, because the facts he sought to elicit form Stevenson had already been elicited from Walker on cross-examination. On cross-examination by petitioner's counsel Walker admitted that his signed statement to Officer Stevenson did not include any mention of petitioner as a perpetrator of the shooting, *see* Trial Tr., dated 8/11/98, at 156-58, a fact counsel returned to in her closing argument, *see* Trial Tr., dated 8/13/98, at 17-18. Because Stevenson's testimony would have been merely cumulative to Walker's own admission on cross-examination, the trial court's exclusion of Stevenson's testimony did violate petitioner's right to compulsory process. *See Daniels v. Lee*, 316

22

F.3d 477, 489 (4th Cir. 2003); *United States v. Romero-Cruz*, 201 F.3d 374, 378 (5th Cir. 2000); *see also*, *Valenzuela-Bernal*, 458 U.S. at 873 (emphasis added) (defendant must show that the evidence "would have been material and favorable *in ways not merely cumulative to* the testimony of available witnesses.").

Petitioner next contends that he was denied his right to confront the witnesses against him when he was prohibited from mentioning, in cross-examination of Vaughn, Tucker's acquittal in the shooting of Ricardo Mitchell and James Davis. In responding to the prosecutor's motion in limine seeking to exclude evidence of Tucker's acquittal, petitioner's counsel explained the defense theory that this acquittal was relevant to showing the prosecution witnesses' reasons for testifying. Counsel explained:

> We're not arguing that because Mr. Tucker was found not guilty that Mr. Jackson should be found not guilty in that particular case [the Mitchell/Davis shooting]. We're arguing that it is – . . .
> . . . .
> Basically we're not arguing that their– We're arguing motive; that it's clear in this particular case that the reason Darius Vaughn came forward not only from pressure from the police, but also pressure from James Davis and Ricardo Mitchell after Tucker was acquitted, they wanted to get the defendant in some way and I think that we are– I just wanted to argue this, that the prosecutor can't have his cake and eat it too. . . .
> . . . .
> . . . . The theory of the defense is that Darius Vaughn didn't get his memory back or didn't make allegations that he saw the shooters until Mr. Tucker was found not guilty. He was contacted by the police. . . .
> . . . .
> . . . . And so because of the close relationship that he had with Mitchell and Davis, he now feels compelled to come forward and identify these individuals as the shooters because of that verdict, and also pressure from the police.

Trial Tr., dated 8/10/98, at 4-6; *see also*, *id*. at 10-11.

The Michigan Court of Appeals rejected petitioner's claim for two reasons. First, the court of appeals concluded that Tucker's acquittal was irrelevant because Vaughn's motive for identifying

23

petitioner, Smart, and Tucker was "not of consequence to the determination of this case." *Jackson*, 2000 WL 33400216, at *2, slip op. at 3. This determination, standing alone, is dubious. The Supreme Court has clearly established that the Sixth Amendment right to confront witnesses guarantees a criminal defendant the right to cross-examine adverse witnesses to expose bias and motivations for testifying. *See Davis*, 415 U.S. at 315-16; *see also*, *Delaware v. Van Arsdall*, 475 U.S. 673, 678-80 (1986). Nevertheless, the Michigan Court of Appeals also concluded that the exclusion of Tucker's acquittal did not violate petitioner's right to confront Vaughn because Vaughn's credibility was extensively attacked in other ways. This determination was reasonable, and thus there was no violation of petitioner's confrontation rights.

As the court of appeals explained,

Vaughn was cross-examined extensively regarding his credibility. Specifically, the fact that Vaughn did not inform police officers that these three codefendants were involved when he was questioned about four hours after the shooting and the fact that Vaughn gave different testimony at the preliminary examination was brought out to the jury. Vaughn's close friendship with both Mitchell and Davis was also brought out. Further, it was clearly established at trial that Vaughn did not inform the police that these three codefendants were involved until 1 ½ years after the shooting. Additionally, Vaughn's contention that he did not inform the police for the time period because he was afraid of these three codefendants was also strongly attacked.

*Jackson*, 2000 WL 33400216, at *2, slip op. at 3.

As noted above, the trial court's restriction on counsel's cross-examination of Burns amounts to a denial of confrontation only if it "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. As the Sixth Circuit has explained, if the trial court impermissibly restricts cross-examination on motive or bias, relief is still not available if "the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory of bias or improper motive." *Boggs v. Collins*, 226 F.3d 728, 739 (6th Cir.

24

2000).  Here, there was  no significant limitation on counsel's cross-examination, and the jury was

given sufficient information to assess petitioner's claim that Vaughn's testimony was not credible.

The cross-examination of Vaughn by all three defendants covers over 75 pages of the trial transcript,

in contrast to the just 20 pages covering his direct examination.  In this extensive cross-examination,

Vaughn admitted that: he did not identify the perpetrators to the officers immediately after the

shooting although he knew who they were, *see* Trial Tr., dated 8/11/98, at 69-70, 111; his testimony

was inconsistent in a number of respects with either his earlier statements to the police or his

preliminary examination testimony, *see id*. at 70-85, 91-93, 108-13, 127; he did not voluntarily go

to the police, but that they had to locate him, *see id*. at 86-87; although he claimed to be afraid of

Tucker, he (inconsistent with the police reports) claimed in his direct testimony that he told the

officers about Tucker immediately after the shooting, *see id*. at 88-89; although he was supposedly

afraid of petitioner and Smart, they had not made any threats and Vaughn was not hiding out or

taking any steps to insure his safety, *see id*. at 119, 128; and he was friends with Mitchell, Davis,

and Walker, and had traveled to court both at the preliminary examination and at trial with Davis

and Mitchell, *see id*. at 93, 106, 118.  Counsel for both petitioner and Smart discussed at length these

flaws in Vaughn's testimony during closing argument.  *See* Trial Tr., dated 8/13/98, at 15-17, 20-22,

24-26. And, although they did not mention Tucker's acquittal in the prior shooting case as the basis

for this collaboration, counsel for petitioner argued that Mitchell, Davis, Walker, and Vaughn were

collaborating to implicate the defendants.  *See id*. at 18-19, 22.  In light of this significant

impeachment of Vaughn's testimony and the explication of the relationship between Vaughn,

Mitchell, Davis, and Walker, it is doubtful that the additional fact of Tucker's acquittal in the

Mitchell/Davis shooting would have had any impact on the jury's assessment of Vaughn's

credibility, and he cannot show that he was prejudiced by the restriction on his cross-examination. *See DiBenedetto v. Hall*, 272 F.3d 1, 11 (1st Cir. 2001); *United States v. Cordova*, 157 F.3d 587, 595 (8th Cir. 1998). Any error was thus harmless, and petitioner is not entitled to habeas relief on this claim. *See generally*, *Van Arsdall*, 475 U.S. at 684 (claim of denial of confrontation based on limitation of cross-examination subject to harmless error analysis).

   2.    *Admission of Hearsay Evidence (Ground 25)*

   Petitioner also contends that he was denied his right to confront the witnesses against him by the introduction of Vaughn's hearsay statement to Walker, through the testimony of Walker. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

   a.  *Clearly Established Law*

   At the time of petitioner's trial and direct appeal, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).[6] In *Roberts*, the Court explained that the underlying purpose of the Confrontation

---

   [6]In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause. *See id.* at 60-68. The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Id.* at 68-69.
   The Supreme Court's decision in *Crawford* does not affect the resolution of petitioner's Confrontation Clause claim, however, for two reasons. First, *Crawford* was not the rule of law applicable at the time of petitioner's trial and direct appeal; *Roberts* was. Under § 2254(d)(1), habeas relief is available only if the state court's decision was contrary to, or an unreasonable application of, "clearly established federal law as determined by the Supreme Court." 28 U.S.C. §

26

Clause is similar to that of the hearsay rule, *i.e.*, to exclude unreliable, out-of-court statements in criminal proceedings.  Thus, the Court reasoned that the Confrontation Clause prohibits the introduction of hearsay statements unless the statement "bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66.  As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception.  The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990).  Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any

---

2254(d)(1).  As the Supreme Court has explained, "clearly established law" under § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*." *Lockyer*, 538 U.S. at 72.  Because petitioner's trial and direct appeal pre-date the Supreme Court's decision, *Crawford* does not constitute "clearly established law" upon which habeas relief for petitioner may be predicated.  *See Brown v. Uphoff*, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004); *Lies v. Jackson*, 100 Fed. Appx. 378, 379 (6th Cir. 2004).  *But see Bockting v. Bayer*, 399 F.3d 1010, 1021 (9th Cir. 2005).

Second, even assuming that *Crawford* could be relied upon as clearly established law, the decision in *Crawford* does not alter the result here.  As explained above, *Crawford* abrogated *Roberts* only with respect to "testimonial" hearsay statements.  The Court explicitly left untouched the application of *Roberts* to cases involving nontestimonial hearsay: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68.  Although the Court in *Crawford* left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" *id*. at 68, the statement at issue here do not fall within any of the formulations of "testimonial" explicated in *Crawford*, *see id*. at 51-52.  *See United States v. Franklin*, 415 F.3d 537, 545-46 (6th Cir. 2005) (citing cases) (casual statements to family and acquaintances nontestimonial under *Crawford*).

27

evidence within [the exception] comports with the substance of the constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

### b. Analysis

Petitioner's claim fails for two reasons. First, he cannot establish that the introduction of Vaughn's hearsay statement to Walker was an unreasonable application of *Roberts*. On the contrary, as noted above Vaughn's statement was properly admitted under the excited utterance exception to the hearsay rule. *See supra* part E.2.c. It is well established that the excited utterance exception is a firmly rooted hearsay exception for purposes of the Confrontation Clause. *See White v. Illinois*, 502 U.S. 346, 355 n.8 (1992).

Second, the Confrontation Clause is not implicated at all in this case because Vaughn, the out-of-court declarant, testified at trial and was subject to cross-examination on a wide variety of matters, including the statement he made to Walker. As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *Green*, 399 U.S. at 162. Thus, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id*. at 158; *see also*, *United States v. Brassard*, 212 F.3d 54, 58 (1st Cir. 2000); *United States v. Barrett*, No. 88-5081, 1989 WL 68812, at *4 (4th Cir. June 16, 1989). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### H.   Identification Evidence (Ground 24)

Petitioner next contends that Vaughn's in-court identification of him should have been

suppressed because suggestive identification procedures created s likelihood of misidentification.

1. *Clearly Established Law*

A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pr-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is

admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id*. If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990). If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

2.   *Analysis*

Here, petitioner cannot satisfy either element of the test. First, petitioner has pointed to no identification procedure which was unduly suggestive. Indeed, there was no "identification procedure" at all in this case. Although Vaughn eventually identified petitioner to the police by name, this is not the type of identification which implicates the Due Process Clause. *Cf. Manson*, 432 U.S. at 133 n.14 (Marshall, J., dissenting) (distinguishing between true identification procedures and a "case where the witness knew the person whom he saw committing a crime, . . . so that the identification procedure was merely used to confirm the suspect's identity."). In any event, petitioner has not shown that Vaughn's in-court identification was tainted by any pretrial procedure which was likely to lead to an irreparable misidentification. Vaughn testified as to the circumstances under which he observed petitioner and his codefendants, and Vaughn knew petitioner prior to the crime. *See Jackson v. Gammon*, 195 F.3d 349, 354 (8th Cir. 1999); *United States v. Santiago*, 174 F. Supp. 2d 16, 31-32 (S.D.N.Y. 2001). Indeed, petitioner does not contend that Vaughns' identification of him resulted from any unduly suggestive police procedure; rather, he contends that Vaughn's identification resulted from Vaughn's collusion with Mitchell, Davis, and Walker to

implicate petitioner in the shooting. This does not go to the reliability of the identification *qua* identification, but rather to the credibility of Vaughn, a subject for cross-examination. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.     *Weight and Sufficiency of the Evidence (Grounds 12, 23, and 33)*

Petitioner next contends that the evidence was insufficient to support his convictions. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.     *Weight of the Evidence*

Petitioner characterizes his claim as one involving the weight of the evidence. Petitioner contends that the evidence was against the great weight of the evidence, and thus that his conviction should be overturned. To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable. It is well established that habeas review is not available to correct errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate

31

judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2.  *Sufficiency of the Evidence*

a.  *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997),

*vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

### b. Analysis

Petitioner does not challenge the sufficiency of the evidence presented against him as to any specific element of the crimes for which he was convicted. Rather, petitioner's sufficiency of the evidence claim is derivative of his other claims. Specifically, petitioner contends that Vaughn's and Walker's testimony were contradicted by their statements and Vaughn's identifications were suggestive, and that without this evidence there was insufficient evidence to convict. *See* Br. in Supp. of Amended App., at 86-88. As noted above, however, petitioner has failed to establish that Vaughn's identification was inadmissible under the Due Process Clause. And, in any event, in analyzing whether the evidence was sufficient, the Court considers all of the evidence admitted, even that which was not properly admitted. *See United States v. Carneglia*, 47 Fed. Appx. 27, 34-35 (2d Cir. 2002); *United States v. Castaneda*, 16 F.3d 1504, 1510 (9th Cir. 1994); *cf. Lockhart v. Nelson*, 488 U.S. 33, 38-39 (1988) (in assessing whether the evidence was sufficient for purposes of determining whether retrial is permitted under the Double Jeopardy Clause, court looks at all of the evidence admitted, even that which was improperly admitted).

As to the inconsistencies in the witnesses' testimonies, it is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story."). "The fact that the testimony is

contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations." *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Jury Review of Statements and Police Reports (Ground 27)*

        Petitioner next contends that he was denied a fair trial when the trial court refused to allow the jury, upon its request, to review the witness statements and police reports. The trial court ruled that copies of these documents could not go to the jury because they had not been admitted into evidence. *See* Trial Tr., dated 8/13/98, at 51-52. Petitioner cannot show that he is entitled to habeas relief on this claim.

        Petitioner cannot show any error in the trial court's conclusion that the statements and police reports were not admitted into evidence. As a factual matter, no party moved for their admission, and the court made no ruling that any of the documents were admissible. Further, because the documents were used only for impeachment or to refresh witnesses' recollections, the documents themselves were not admissible as substantive evidence. *See, e.g.*, *People v. Fournier*, 86 Mich. App. 768, 781, 273 N.W.2d 555, 561 (1978). As a legal matter, the trial court did not err in refusing to allow the jury to take into their deliberations exhibits which had not been admitted into evidence. *See People v. Davis*, 216 Mich. App. 47, 57, 549 N.W.2d 1, 6 (1996); *cf. United States v. Warner*, 428 F.2d 730, 738 (8th Cir. 1970) ("As a general rule, . . . exhibits should not be sent to the jury room which have not been admitted."). Thus, petitioner is not entitled to habeas relief on this claim.

34

*See United States ex rel. Bosek v. Peters*, 837 F. Supp. 902, 913 (N.D. Ill. 1993).

K.      *Prosecutorial Misconduct (Ground 28)*

Petitioner next contends that the prosecutor committed prejudicial misconduct by improperly bolstering the witnesses' testimonies and by vouching for their credibility.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).

2.      *Analysis*

During closing argument, the prosecutor responded to petitioner's argument that the prosecution witnesses were lying.  The prosecutor argued:

Ladies and gentlemen, when you ask yourself whether or not someone, a witness, has a special reason to tell the truth or lie and you contrast the testimony of the alibi witness yesterday, you think good and hard about whether nor not Ricardo Mitchell or Darius Vaughn have a special reason either to tell the truth or lie. You ask yourselves why would Darius Vaughn get in front of each one of you and say Mr. Jackson, Mr. Smart and Mr. Tucker were there, Mr. Jackson and Mr. Smart were shooting, if that wasn't the case. Why would Mr. Mitchell get up and say the same thing. And you ask yourselves this and recall that all attorneys, myself and the defense attorneys, asked each one of those individuals whether they had any kind of grudge, hatred, bad feelings toward any of these three men at the time of this shooting, and uniformly, each and every single time it was asked by each attorney, the answer was not. And there was no evidence to contradict that. Ladies and gentlemen, there was no grudge. Darius Vaughn and Ricardo Mitchell aren't up here trying to pin this shooting on three people that they've known since childhood, who live in the neighborhood, for the fun of it. You ask yourself why. What reason would they have to tell you what they did if it wasn't what happened.

Trial Tr., dated 8/13/98, at 10-11. During rebuttal, the prosecutor reiterated this point in response to defense counsel's closing argument:

Miss Rock says these two witnesses [Mitchell and Vaughn] are changing their testimony to suit their needs. They're not uninterested parties. They are interested parties. Why. What needs could they possibly be fulfilling by accusing three guys from the neighborhood they've known since childhood of killing one of their friends and shooting at them. They're not being – they didn't come to the police and accuse them of pickpocketing. They accused them of murder and attempted murder. You ask yourself why would they be so prepared to lie. What possible reason. Why. What reason would they have to get up on that stand and concoct this ridiculous tale, as they seem to portray, that these three men are involved if they weren't. No reason. And in fact you know what they said matches the physical evidence.

*Id*. at 31.

Petitioner contends that the prosecutor's comments about Mitchell's and Vaughn's motivations for testifying constituted impermissible vouching. The Court should disagree. Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor

36

has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also, United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[7]  Here, the prosecutor's comments did not place the prestige of the government behind the witness by making personal assurances of a witness's veracity, nor did the prosecutor imply that he knew of facts that had not been introduced.  Rather, the prosecutor pointed to the lack of evidence that the witnesses had a motive to lie, and suggested that the jury use its common sense in evaluating petitioner's argument that these witnesses were not credible.  Thus, the prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence.  As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[8]

---

[7]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

[8]In addition to his claims relating to the prosecutor's comments, in his brief petitioner contends that the prosecutor permitted Vaughn to perjure himself, although this argument is not set forth as a separately numbered claim at the beginning of the brief.  *See* Br. in Supp. of Amended Pet., at 71-72.  As the Fourth Circuit has explained, however, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured.

L.      *Suppression of Evidence (Ground 35)*

Petitioner next contends that the prosecutor suppressed exculpatory evidence in his trial.  The

Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause requires the state to disclose exculpatory evidence to the defense.

*See Brady v. Maryland*, 373 U.S. 83 (1963).  "There are three components of a true *Brady*

violation:

The evidence at issue must be favorable to the accused, either because it is exculpatory, or because

it is impeaching; that evidence must have been suppressed by the State, either willfully or

inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed

by the prosecution in that it was not known to petitioner and not available from another source; (2)

---

Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony."  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976).  As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'").  Although petitioner points to inconsistencies in Vaughn's testimony, he has offered nothing to show that Vaughn's testimony at trial amounted to perjury, that is, the willful assertion of a false, material fact.  *See United States v. Griffin*, 194 F.3d 808, 819 (7th Cir. 1999) (inconsistencies in confidential informant's testimony concerning time frame of drug buys did not alone establish that testimony was perjured); *Kirk v. Meyer*, No. 01-5410, 2002 WL 32153969, at *2 (E.D. Pa. Apr. 10, 2002) (no use of perjured testimony established by victim's inconsistent testimony concerning the timing of certain events).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

38

the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir. 1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

    2.    *Analysis*

    Petitioner does not contend that the prosecution suppressed any physical evidence or witness testimony. Rather, petitioner's claim stems from the prosecution's actions in the criminal case relating to the shooting of Mitchell and Davis. Petitioner contends that the prosecutor in that case abandoned his prosecution of petitioner based on the prosecutor's inaccurate representation that he could not locate Davis to testify. Petitioner argues that the prosecution's abandonment of the trial in the Mitchell/Davis case was therefore improper, and that had the prosecution continued he would have been acquitted in that case. Petitioner further contends that this acquittal would then have been admissible in his trial on the Webb murder to rebut the prosecutor's use of the Mitchell/Davis shooting as prior acts evidence showing identity. *See* Br. in Supp. of Amended Pet., at 95-96. The Court should conclude that this argument fails, for several reasons.

    First, petitioner cannot show that the prosecutor suppressed any evidence. The prosecutor's discontinuance of the prosecution in the Mitchell/Davis case was not improper. It is a fundamental aspect of the separation of powers that, in the absence of illegality or unconstitionality, "the prosecution's decision to proceed to trial or dismiss the case is exempt from judicial review pursuant to the separation of powers doctrine." *People v. Jones*, 252 Mich. App. 1, 10, 650 N.W.2d 717, 721-22 (2002); *see also*, *People v. Williams*, 244 Mich. App. 249, 251-52, 625 N.W.2d 132, 134 (2001).

It is true that a Michigan statute prevents the prosecutor from discontinuing a prosecution without leave of court. *See* MICH. COMP. LAWS § 767.29.  However, this statute is interpreted with a view to the prosecutor's exclusive prerogatives under the separation of powers doctrine.  Thus, in applying this statute the state court does not exercise supervisory power over the prosecutor, and may reverse or revise the prosecutor's decision to discontinue a case only if the prosecutor has abused his powers. *See Genesee County Prosecutor v. Genesee Cir. Judge*, 391 Mich. 115, 121, 215 N.W.2d 145, 147 (1974).  Here, petitioner cannot show that the prosecutor acted illegally or otherwise abused his powers.  Even assuming, as petitioner argues, that the prosecutor knew the location of Davis, petitioner has not argued that the prosecution knew the location of Mitchell at the time of the trial on the Mitchell/Davis shooting.  It was within the prosecutor's broad charging discretion to decide whether to proceed or discontinue the prosecution in light of Mitchell's absence, even if he knew of the location of Davis.  Further, the act of dismissal, even if for no reason at all, was not unconstitutional.  While the prosecutor's reasons for dismissal might be relevant to a constitutional claim in the Mitchell/Davis case–such as a double jeopardy or speedy trial claim–the act of dismissal itself does not amount to a constitutional violation.

Further, petitioner cannot show that the prosecution suppressed any exculpatory evidence because, as a factual matter, there was no acquittal in the Mitchell/Davis case to be suppressed.[9] Petitioner essentially argues not that the prosecution failed to turn over exculpatory evidence which it possessed, but rather failed to create exculpatory evidence by continuing with the trial in the

[9]Of course, for the same reasons that Tucker's acquittal was not admissible, it is likely that any acquittal of petitioner would not have been admissible at trial.  Because it does not alter the conclusion with respect to this claim, however, I will assume that, had petitioner been acquitted in the Mitchell/Davis case, that acquittal would have been admissible in petitioner's trial relating to the Vaughn/Webb shooting.

40

Mitchell/Davis case.  It is well established, however, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence."); *cf. Arizona v. Youngblood*, 488 U.S. 51, 59 (1988) (the government in a criminal prosecution "do[es] not have a constitutional duty to perform any particular test.")

Further, petitioner cannot show that, had the trial in the Mitchell/Davis shooting continued to completion, any exculpatory evidence would resulted.  Petitioner assumes that the trial would have ended in his acquittal, but this assumption is rank speculation.  It is impossible to tell what course the trial would have taken, what evidence would have been produced, and what outcome would have been reached had the trial continued.  Such speculation is not sufficient to show either favorability or materiality of the evidence under *Brady*.  *See United States v. Agurs*, 427 U.S. 97, 109-10 (1976); *United States v. Stewart*, 325 F. Supp. 2d 474, 501 (D. Del. 2004).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

M.     *Ineffective Assistance of Counsel (Grounds 6, 17, 29, and 31-32)*

Petitioner next contends that his counsel rendered constitutionally deficient assistance in a number of respects.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's

errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at

687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here

is no reason for a court deciding an ineffective assistance claim . . . to address both components of

the inquiry if the defendant makes an insufficient showing on one." *Id*. at 697. If "it is easier to

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course

should be followed." *Id.*

      With respect to the performance prong of the inquiry, a strong presumption exists that

counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689;

*O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the

presumption that, under the circumstances, the challenged action 'might be considered sound trial

strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel

is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the

reviewing court must determine, based on the totality of the evidence before the factfinder, "whether

there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable

doubt respecting guilt." *Id*. at 695.

      2.    *Analysis*

*a. Trial Counsel*

      Petitioner sets forth a litany of complaints respecting his trial counsel's performance at trial.

Specifically, petitioner contends that trial counsel was ineffective for failing to: (1) properly set forth

the grounds for severance; (2) introduce evidence of the witnesses' prior inconsistent statements;

(3) object to the prosecution's false "two gun" theory; (4) properly present the defense theory; (5) properly present defense motions for directed verdict; (6) object to Vaughn's identification as unduly suggestive; (7) object to Walker's hearsay testimony on Confrontation Clause grounds; (8) call Sergeant Visbara to testify as to Vaughn's initial statement to him, in which Vaughn failed to identify petitioner as a perpetrator; and (9) elicit expert testimony on the inherently suspect qualities of eyewitness identification.  Each of these claims is without merit.

(1) Severance: As discussed above, *see supra* part F.2, petitioner has not shown that he was prejudiced by the trial court's failure to sever his trial from that of his codefendants.  He therefore cannot show that he was prejudiced by counsel's failure to properly move for severance, even if counsel's performance was deficient.

(2) Evidence of Prior Inconsistent Statements: Although counsel did not seek admission into evidence of the witnesses' statements to the police and prior testimony, the witnesses (in particular Vaughn) were extensively cross-examined by counsel for all three defendants on the inconsistencies between their testimonies at trial and there previous statements.  *See supra* part G.1.b.  Thus, all of this information was properly before the jury, and was the basis of counsel's argument during summation.  Petitioner has failed to offer anything to show a reasonable probability that had the statements themselves been admitted into evidence as exhibits, the result of the proceeding would have been different.

(3) The "Two Gun" Theory: Petitioner argues that counsel was ineffective for failing to object to the prosecutor's "two gun" theory.  Petitioner does not expound on this claim in his brief, and it is unclear to what he is referring.  Nevertheless, the primary issue at trial was the identity of the individuals involved in the shooting.  There was not a significant question as to which of the

three defendants fired the fatal shot, because all were equally liable as aiders and abettors.  In the absence of any further argument expounding on this claim, petitioner has failed to satisfy his burden of demonstrating prejudice.

(4) <u>Defense Theory</u>: Petitioner also contends that counsel failed to properly present the defense theory.  Again, petitioner does not expound on this claim in his briefs.  In any event, as to this claim petitioner cannot show that counsel's performance was deficient.  As the Michigan Court of Appeals explained, counsel "strongly attacked Vaughn's credibility and the inconsistencies in his statements, including his motive to lie." *Jackson*, 2000 WL 33400216, at *4, slip op. at 5.  Further, to the extent that petitioner bases this argument on counsel's failure to introduce Tucker's acquittal in the Mitchell/Davis case, counsel sought to do so but was overruled by the trial court.

(5) <u>Motion for Directed Verdict</u>: Petitioner also contends that counsel failed to properly present a motion for directed verdict.  However, as explained above, the evidence at trial was sufficient to sustain petitioner's conviction.  *See supra* part I.2.b.  Therefore, any motion for directed verdict would have been unsuccessful, and petitioner cannot establish prejudice from counsel's allegedly deficient performance.

(6) <u>Vaughn's Identification</u>: Petitioner next argues that counsel was ineffective for failing to file a motion to suppress Vaughn's identification.  As explained earlier in this Report, however, petitioner has failed to demonstrate that Vaughn's identification resulted from any unduly suggestive identification procedures.  *See supra*, part H.2.  Thus, petitioner cannot show that counsel was deficient for failing to seek suppression, or that any such motion would have been granted.

(7) <u>Walker's Hearsay Testimony</u>: Petitioner also contends that counsel was ineffective for failing to object to Walker's testimony concerning Vaughn's hearsay statement on the basis of the

44

Confrontation Clause.   Again, as explained above, petitioner has failed to demonstrate a Confrontation Clause violation by the admission of this testimony, *see supra* part G.2.b, and he thus cannot show that counsel was deficient or that he was prejudiced by the absence of an objection on this basis.

(8) <u>Sergeant Visbara</u>: Petitioner next contends that counsel was ineffective for failing to call Sergeant Visbara to testify that Vaughn had not identified petitioner as a perpetrator when Visbara initially interviewed Vaughn.   However, the fact that Vaughn had not identified petitioner until a year and half after the shooting was well-established at trial, and was not contested by anyone. Thus, Visbara's testimony would have added nothing that was not already well known to the jury, and petitioner cannot establish that he was prejudiced by the absence of this testimony.

(9) Finally, petitioner contends that counsel was ineffective for failing to elicit expert testimony on the inherently suspect qualities of eyewitness identification.   However, counsel's decision to rely on extensive cross-examination attacking the identification and the basis for it was a reasonable tactical decision.  *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 790 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005); *Dorch v. Smith*, No. 01-CV-71206, 2002 WL 32598987, at *18 (E.D. Mich. Sept. 11, 2002) (Tarnow, J.). Further, petitioner cannot demonstrate prejudice.   Vaughn's credibility was extensively attacked, Vaughn knew petitioner so that this was not a case involving an identification of a stranger.   Indeed, petitioner's principal attack on the identification was not on the unreliability of the identification as a matter of what Vaughn saw, but on Vaughn's motives which led him to knowingly misidentify petitioner as the perpetrator.

For these reasons, the Court should conclude that petitioner is not entitled to habeas relief

45

on any of these ineffective assistance of counsel claims.

### b. Appellate Counsel

Petitioner also claims that his appellate counsel was ineffective for failing to raise many of his habeas claims on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal.

Petitioner's claim that he need not demonstrate prejudice, because counsel was acting under a conflict of interest, is without merit. Under the relevant caselaw, an "actual conflict of interest results if the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests." *Stoia v. United States*, 22 F.3d 766, 770 (7th Cir. 1994) (internal quotation omitted); *accord Bonin v. Calderon*, 59 F.3d 815, 827 (9th Cir. 1995). In order to show such a conflict, petitioner must "'point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) (internal quotation omitted)); *accord Riggs v. United States*, 209 F.3d 828, 831-32 (6th Cir. 2000). An "adverse effect" is established where the defendant points to "some plausible alternative defense strategy or tactic [that] could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Perillo*, 205 F.3d at 781 (internal quotation omitted); *accord Stoia*, 22 F.3d at 771 (quoting *Wilson v. Mintzes*, 761 F.2d 275, 286 (6th Cir. 1985)). In his brief, petitioner points to numerous alleged instances of appellate counsel's deficient performance of failure to follow

46

petitioner's instructions.  He does not, however, allege any facts which who that counsel's action resulted from a desire to advance counsel's own interests at the expense of petitioner's interests. *See* Br. in Supp. of Amended Pet., at 90-92.  Such run-of-the-mill disputes with respect to counsel's performance neither provide evidence for, nor give rise to, a conflict of interest.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

N.    *Sentencing Claims (Grounds 3 and 18)*

Petitioner next raises two challenges to his sentence.

1.    *Proportionality (Ground 3)*

First, petitioner contends that the sentence was disproportionate to the offense.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." *Id*. at 290.  In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292.  Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id*. at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decision

47

in *Harmelin v. Michigan*, 501 U.S. 957 (1991).  In *Harmelin*, the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment.  Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context.  *See Harmelin*, 501 U.S. at 965 (Scalia, J.).  Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments which are "grossly" disproportionate to the crime.  *See id*. at 1001 (Kennedy, J.).  Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case.  *See id*. at 1001-05.  Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  *Id*. at 1005.[10]  Thus, it is unclear whether, and to what extent, *Solem* remains good law.  *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences.  Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it.  Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized,

although only two Justices [Rehnquist and Scalia] would have held that the eighth

---

[10]Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three-factor test applied to the sentencing scheme at issue.  *See Harmelin*, 501 U.S. at 1016 (White, J., dissenting).

amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality.

*United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter,

one could argue without fear of contradiction by any decision of [the Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative.

*Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id*. at 997-1001 (Kennedy, J.).

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id*. at 23-24 (opinion of O'Connor, J.). Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id*. at 31-32 (opinion of Scalia, J.); *id*. at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides

49

the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view

by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as

by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id*.

at 33-35 (opinion of Stevens, J.); *id*. at 35-37 (opinion of Breyer, J.).

Thus, although the particular Justices attached to each position have changed somewhat, the

numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes

of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether

the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915

(6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under

*Ewing*.

### b.  Analysis

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence

imposed , does not "lead[] to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005,

and thus the Court should conclude that petitioner is not entitled to habeas relief on this ground.

Petitioner was convicted of second degree murder in a case in which he and his codefendants fired

into another car, killing one occupant and wounding the other. In these circumstances, a sentence

of 20-40 years' imprisonment is not grossly disproportionate to the offense. *See Welch v. Burke*,

49 F. Supp. 2d 992, 1009-10 (E.D. Mich. 1999) (Cleland, J.) (life without parole for second-degree

murder conviction under MCLA § 750.317 not disproportionate); *Ramos v. Weber*, 303 F.3d 934,

937-38 (8th Cir. 2002) (life imprisonment for first-degree manslaughter); *cf. Lockyer*, 538 U.S. at

73-77 (upholding sentence of 25 years' to life imprisonment for theft under recidivist statute);

*Ewing*, 538 U.S. at 28-30 (same). Accordingly, the Court should conclude that petitioner is not

50

entitled to habeas relief on this claim.

2.    *Judge's Basis for Sentence (Ground 18)*

Petitioner also contends that the trial judge abused his discretion in imposing sentence because he determined that petitioner was guilty of an "execution style" murder, even though the jury had found petitioner guilty of only second degree, and not first degree, murder. This allegation fails to raise a constitutional claim. So long as the trial court selects a sentence within the statutory range authorized by the legislature for the crime of conviction, in choosing a sentence a court may conduct "an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider or the source from which it may come." *United States v. Grayson*, 438 U.S. 41, 50 (1978). Thus, even where a defendant is acquitted of a particular charge, a "court, without offending due process, may consider at sentencing, and act upon, acquitted conduct." *United States v. Cabe*, 241 F.3d 98, 101 (1st Cir. 2001) (citing *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam)). Here, the trial judge sentenced petitioner within the statutorily prescribed range for crime of second degree murder. The judge's comments reflect no more  than that the judge based his sentence on his view of the heinousness of petitioner's crimes and petitioner's prior criminal record. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

O.    *Newly Discovered Evidence (Grounds 11, 22, and 34)*

Petitioner also contends that he possesses newly discovered evidence that Ricardo Mitchell admitted lying about petitioner's involvement at trial. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner's claim of newly discovered evidence does not provide a basis for habeas relief absent some underlying constitutional violation. A writ of habeas corpus may be granted "only on

51

the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also*, *id*. at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing apart from any underlying constitutional claim, provides no basis for habeas relief.

P.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

52

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

 

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 3/6/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on March 6, 2006.

s/Eddrey Butts
Case Manager

53