UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY JACKSON,

    Plaintiff,

v.

                                    Case No. 02-74233

TIMOTHY LUOMA,                  Honorable Nancy G. Edmunds

    Defendant.
_____/

**ORDER ACCEPTING IN PART AND REJECTING IN PART MAGISTRATE'S REPORT AND RECOMMENDATION [74]**

This matter came before the Court on Magistrate Judge Paul J. Komives' Report and Recommendation (R&R) recommending that the Court deny Petitioner's Application for a Writ of Habeas Corpus. The thorough R&R provides an accurate background and generally well-reasoned resolution to this case. The Court therefore ACCEPTS IN PART the R&R. As to one issue, however, the Court finds that the Magistrate erred. The following discussion is germane only to the issue discussed in Part O of the R&R.

The following is a summary of the background to this case, as provided by the Michigan Court of Appeals:

> This case arises out of the shooting death of Jermaine Webb on December 8, 1996, at approximately 4:15 a.m. in the city of Detroit. Darius Vaughn, a passenger in Webb's vehicle at the time of the shooting, testified at trial that two men in a green Jeep Cherokee, identified as defendant and co-defendant Arthur Smart, opened fire with rifles as Webb was stopped at a red traffic light. Vaughn also identified Kenneth Tucker as the driver of the Jeep Cherokee. Vaughn stated that he had the opportunity to look at the three men in the Jeep Cherokee because it had passed him and Webb three times as they were driving on Chene. Vaughn also stated that he had known

> Tucker for about fifteen years, and that he had known defendant and Smart for about nine years. During the shooting, Vaughn, who was unhurt, was able to get out of the car and fled to a nearby house of a friend. Shortly after 5:00 a.m., police officers arrived on the scene. Vaughn also returned to the scene within twenty to twenty-five minutes, but did not identify the shooters to police officers at that time. At trial, Vaughn testified that he did not inform the police officers of the shooters because he feared for his life. In fact, it was not until February 11, 1998, when police officers sought Vaughn, that Vaughn actually identified defendant and Smart as the shooters. Defendant, Smart, and Tucker were all charged with first-degree murder, assault with intent to murder, and defendant and Smart were also charged with felony-firearm. Defendant and Smart were tried before the same jury and ultimately convicted of second-degree murder, assault with intent to murder, and felony firearm. Tucker was tried in a bench trial and acquitted of all charges.

*People v. Jackson*, 2000 Mich. App. LEXIS 482, *1-3 (Nov. 21, 2000).

Darius Vaughn's identification of Petitioner was problematic, in that Vaughn initially told police that he did not see the shooter, and then did not identify Petitioner until police questioned him more than a year later, despite the fact that he knew Petitioner. Petitioner's theory at trial was that Mr. Vaughn was lying.

The jury did not need to rely only on Vaughn's testimony, however. In addition to the Chene Street shooting, the evidence at trial showed that another shooting had taken place on the morning of December 8, 1996, within about thirty minutes and only about two blocks away, on Hancock Street. Ballistics evidence tied the two shootings together, supporting the prosecution's theory that the same individuals were involved in both incidents. Ricardo Mitchell testified about the Hancock Street shooting, and unlike Mr. Vaughn, Mr. Mitchell had identified Petitioner to police officers immediately after the shooting. Therefore, while Mr. Mitchell's testimony did not relate directly to the Chene Street shooting, it substantially reinforced the evidence against Petitioner.

Petitioner appealed his conviction directly to the Michigan Court of Appeals, which affirmed, and to the Michigan Supreme Court, which declined to review the case. Petitioner then filed a Motion for Relief from Judgment in the Wayne County Circuit Court. Acting *pro se*, Petitioner raised a number of arguments, many of which he raises here. For the present purposes, however, this Court is concerned only with the following post-conviction claim:

> THE DEFENDANT SHOULD BE ENTITLED TO A NEW TRIAL AND/OR AN EVIDENTIARY HEARING AND/OR AN INVESTIGATOR AND/OR COUNSEL TO DEVELOP HIS CLAIMS AND OBTAIN AFFIDAVITS FROM WITNESSES THAT STATE THAT RICARDO MITCHELL ADMITTED TO TESTIFYING FALSELY ABOUT DEFENDANT'S INVOLVEMENT AT THE BEHEST OF THE DETROIT POLICE.

(Trial Ct. Pet. at 37.) In support of this request, Petitioner submitted a notarized affidavit, signed by himself, which states as follows:

> [O]n an unspecified date that Tanisha Brown informed me that Ricardo Mitchell approached her in the presence of a relative at Northeastern's Annual Class Reunion on an unspecified date and informed her that he was "sorry for lying on G-Gary (Gary Jackson) and Pee-Wee (Arthur Smart), but the police made him do it."

(*Id.* at Ex. I.)

The Wayne County Circuit Court denied Petitioner's Motion for Relief from Judgment on January 6, 2003. The Court issued a four-page opinion stating its reasoning as to most of Petitioner's claims, but did not address his claim of newly discovered evidence of police misconduct.[1]

---

[1] In a possible reference to the claim, the court states that it "has also reviewed the Defendant's arguments for a New Trial . . . . and the Court finds that [it] lack[s] merit." (Trial Ct. Jan. 6, 2003 Order at 4.)

Petitioner sought review in the Michigan Court of Appeals raising, among others, the same argument, and providing the affidavit as evidence. (App. Ct. Br. at 37; Ex. I.) On December 12, 2003, Petitioner filed "the original and 3 copies of a pro-per Delayed Application for Leave to Appeal," as well as an affidavit of indigency and statement explaining delay, a prison account statement, a copy of the Wayne County Circuit Court's Order, notice of hearing, and proof of service. He also submitted a copy of the circuit court docket sheet and record. (Sup. Ct. Pet. Ex. 5.)

On December 29, 2003, the Michigan Court of Appeals responded with a letter stating that Petitioner's filing had been deficient, apparently because Petitioner had not included the appropriate number of copies of all materials. (*Id.* Ex. B.)[2] On January 12, 2004,[3] in an apparent effort to rectify this problem, Petitioner submitted to the Court of Appeals several copies of court documents. (*Id.* Ex. 10.) He also submitted an affidavit stating that "I was unable to reproduce four (4) additional copies of the June 20, 2003 Register of Actions due to the AMF Law Library's denial of my copy request, so I mailed the June 20, 2003 Register of Actions to your office and at that point I did not have another copy to reproduce." (*Id.*)

Substantial evidence supports Petitioner's argument that he tried desperately to make the required photocopies to appeal his case. To name just a few examples, he filed a grievance with the Michigan Department of Corrections regarding a November 5, 2003

---

[2] Most of the Exhibits to Petitioner's Petition to the Michigan Supreme Court are labeled in sequential order with numerals, but there are also some exhibits labeled with letters that are not sequential.

[3] Petitioner's letter and proof of service are undated, but his postage receipt lists the date of a package sent to the Court of Appeals as January 12, 2004.

denial of his request to make copies. Petitioner states in Step II of his appeal of the denial of this grievance, dated December 16, 2003, "I am appealing . . . because I must submit the relevant documents with my Application for Leave to Appeal . . . . [B]y failing to . . . submit[] the relevant documents with my Application it is virtually guaranteed that my Application . . . will be denied." In Step III of his grievance appeal, Petitioner states, "I am appealing because . . . my appeal may be subject to dismissal for failure to pursue the case in conformity with the Rules MCR 7.201(B)(3) and 7.216(A)(10). These rules are strickly [sic] enforced." (*Id.* Ex. V.)

On January 14, 2004, Defendant, Warden Timothy Luoma, responded to Petitioner's grievances, stating,

> [T]he prisoner stated that before leave to appeal would be granted, he was required to submit an application for leave. He claimed that he needed documents photocopied in order to be able to submit the application. In response to this, the librarian contacted the Office of Policy and Hearings, who stated that in a case such as this, where the prisoner was requesting a legal loan for the photocopies, the facility is not required to provide copies via loan for an application. Had his request to appeal already been approved, then his request for legal copies to attach to the appeal would have been granted. Therefore, the librarian was correct in denying the request. In order to file the application, the prisoner will be required to use his own funds.

(*Id.*)

Petitioner evidently was unable to make the required copies, and on February 6, 2004, the Court of Appeals dismissed Petitioner's Application for Leave to Appeal:

> The delayed application for leave to appeal is DISMISSED for failure to pursue the case in conformity with the rules. MCR 7.201(b)(3) and 7.216(A)(10). This Court provided notice regarding the nature of the defects in this filing, and the defects were not corrected in a timely manner by providing this Court with five copies of a delayed application for leave to appeal, which may not be longer than 50 pages, conforming to MCR 7.212(C), four additional copies of the circuit court's register of actions dated June 30, 2003, five copies of a statement of facts explaining the reasons for

5

>  delay, four additional copies of all the appendices that were originally filed with this Court, and a proof of service that appellant sent a copy of the conforming application and a copy of the statement of facts explaining the reasons for delay to the prosecutor. Dismissal is without prejudice to whatever other relief may be available consistent with court rules.

(Mich. Ct. App. Feb. 6, 2004 Order.)

Petitioner appealed this Order to the Michigan Supreme Court. Among his arguments, Plaintiff raised the issue of newly discovered evidence of police misconduct. Petitioner presented the reasons why he could not comply with the Court of Appeals's requests for more copies. On October 25, 2004, the Michigan Supreme Court denied Petitioner's appeal "because we are not persuaded that the questions presented should be reviewed by this Court." (Mich. Sup. Ct. Oct. 25, 2004 Order.)

Petitioner then sought habeas corpus review in this Court. Among the issues presented, Petitioner argues that he should be appointed counsel and granted a new trial, or at least an evidentiary hearing, on the issue of whether Ricardo Mitchell falsely implicated Petitioner because the police "made him." Petitioner maintains that he learned of this evidence through a telephone call with "Tanisha Brown," to whom Mr. Mitchell had admitted falsely implicating Petitioner, and that other witnesses were also present and would verify Mr. Mitchell's admission. (Amended Pet. at 85.)

Magistrate Judge Komives' March 3, 2006 R&R recommends that the Court "should conclude that petitioner is not entitled to habeas relief on this claim." The Magistrate reasoned,

>  Petitioner's claim of newly discovered evidence does not provide a basis for habeas relief absent some underlying constitutional violation. A writ of habeas corpus may be granted "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, the existence of new evidence, standing

alone, is not a basis for granting the writ. As the Supreme Court has explained: "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also, id.* at 404 (claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise [procedurally] barred *constitutional* claim considered on the merits.") (emphasis added); *Schlup v. Delo*, 513 U.S. 298, 314-16 (distinguishing, in part, *Herrera* because in this case the petitioner "accompanie[d] his claim of innocence with an assertion of constitutional error at trial."); *Townsend v. Sain*, 372 U.S. 293, 317 (1963) ("Of course, such evidence must bear upon the constitutionality of the applicant's detention; the existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus."), *overruled in part on other grounds*, *Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992). Thus, the newly discovered evidence, standing apart from any underlying constitutional claim, provides no basis for habeas relief.

(R&R at 51-52.)

The Court disagrees with the R&R inasmuch as it finds that Petitioner's newly discovered evidence cannot provide the basis for habeas relief because there is no "underlying constitutional violation."

Petitioner alleges that an important prosecution witness committed perjury "at the behest of the Detroit Police" and provides evidence that the witness has admitted to lying because "the police made him." If Petitioner's suggestion is true, then police officers fabricated evidence in this case by forcing a witness to testify falsely. This Court does not hesitate to conclude that such conduct is forbidden by the Constitution. The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (U.S. 1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Moreover, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the

7

government's behalf . . . , including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (U.S. 1995). In sum, Petitioner had an absolute constitutional right to a fair trial, free from the unlawful acts that he has alleged.

If the jury had been presented with evidence that police officers had forced Ricardo Mitchell to lie against Petitioner, and thus that Petitioner was not present at the Hancock Street shooting, it would not likely have believed that Petitioner was present at the Chene Street shooting either. Evidence at trial tied these two shootings together, and the prosecution's theory was that the same people perpetrated both acts. Moreover, Darius Vaughn's testimony--the only direct evidence against Petitioner--was problematic because he did not implicate Petitioner until more than a year after the shooting, despite having been questioned about the case immediately.

The Court recognizes that standing alone, Petitioner's double-hearsay, self-serving, unsupported affidavit may do very little to further his case. But as an indigent prisoner, he has had no opportunity to explore the issue. The Court therefore will appoint counsel to represent Petitioner as to the one issue the Court has not yet ruled upon: Whether police officers pressured Ricardo Mitchell to testify falsely against Petitioner. Presumably, this will require investigation and the development of a factual record.

The Court also wishes to hear argument regarding whether Petitioner has fully exhausted his state court remedies such that federal habeas corpus is now available. As the background discussion above illustrates, this is a difficult issue for which representation by counsel and further argument are appropriate.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court ACCEPTS IN PART and REJECTS IN PART the Magistrate

Judge's Report and Recommendation.  The Court will appoint counsel to provide Defendant with representation consistent with this Opinion, and limited to the narrow issue discussed above.  Upon the development of a factual record and further argument from Petitioner and Defendant, the Court will rule on Defendant's Petition.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  April 11, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 11, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager
